IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| WESTERN STATES ALTERNATIVE SERVICES, INC., a New Mexico not-for-profit corporation, and PATRICIA KNIGHT,<br><br>    Plaintiffs,<br>vs.<br><br>NEW MEXICO DEPARTMENT OF HEALTH, NEW MEXICO DEPARTMENT OF HUMAN SERVICES, MICHAEL BURCKHARDT, in his official and individual capacities, ALEX VALDEZ, in his official capacity, BRUCE WEYDEMEYER, in his official and individual capacities, STEVE DOSSEY, in his official and individual capacities, SIGRID E. OLSON, in her official and individual capacities, ARTURO RANGEL, in his official and individual capacities, and SANDRA ROMERO, in her official and individual capacities,<br><br>    Defendants. | No. CIV 97-0025 PK/RLP |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants' Motion for Partial Summary Judgment on Plaintiffs' First Amendment Claims filed September 25, 1998 (doc. 31), Defendants' Motion for Partial Summary Judgment

on HSD's Liability for First Amendment Retaliation and WSAS' Damages filed January 21, 1999 (doc. 38), and Defendants' Motion for Summary Judgment on Qualified Immunity and Eleventh Amendment Immunity filed January 21, 1999 (doc. 42). The court, being advised fully in the premises, finds that all claims against Defendants New Mexico Department of Health, New Mexico Department of Human Services, and all remaining defendants named in their official capacity should be dismissed based upon Eleventh Amendment immunity. The court will also grant summary judgment in favor of the remaining individual capacity defendants on the First Amendment retaliation claims based upon qualified immunity or, in the alternative, collateral estoppel. The remaining partial summary judgment motion (doc. 38) is denied as moot.

Background

An earlier memorandum opinion and order ("opinion"), filed March 17, 1998 (doc. 22) (Vazquez, J.), extensively discussed the facts of this case and thus the court need not restate them, other than to say that the predicate of Plaintiffs' claims is the termination of a provider agreement wherein Plaintiff Western States Alternative Services, Inc. ("WSAS") agreed with the State to provide services to developmentally disabled persons. Plaintiffs' complaint alleges five counts against Defendants: (1) denial of the right to freedom of expression as citizens under the First and Fourteenth Amendments; (2) denial of the right to

freedom of expression as independent contractors under the First and Fourteenth Amendments; (3) deprivation of substantive and procedural due process under the Fourteenth Amendment; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing. Judge Vazquez's opinion partially granted Defendants' motion to dismiss, disposing of Plaintiffs' substantive and procedural due process claim, and dismissing Plaintiff Patricia Knight's claims on all grounds but the First Amendment claims. In addition, Judge Vazquez dismissed Defendants Alex Valdez and Sigrid E. Olson (prosecutorial immunity), and dismissed Plaintiffs' declaratory judgment claim on consent.

## Discussion

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must consider all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party; however, that material must contain probative evidence that would allow a trier of fact to find in favor of the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The nonmovant may not rest upon its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

I. Eleventh Amendment Immunity

Defendants New Mexico Department of Health ("NMDOH") and New Mexico Department of Human Services ("NMHSD") assert that, as arms of the state, they are entitled to Eleventh Amendment immunity, and all claims against them should be dismissed. Plaintiffs concede that NMDOH and NMHSD are arms of the state and should be granted such immunity on the First Amendment claims. However, Plaintiffs contend that Eleventh Amendment immunity is inapplicable to their contract law claims against Defendants NMDOH and NMHSD because the state has expressly waived such immunity by statute. Plaintiffs also contend that Eleventh Amendment immunity is inapplicable to claims against the individual Defendants.

The Eleventh Amendment provides that the judicial power of the United States shall not "extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. However, a state may waive its Eleventh Amendment immunity by consenting to suit in federal court. See Wisconsin Dep't of Corrections v. Schacht, 118 S. Ct. 2047, 2052 (1998). Waiver, however, must be clear and unequivocal–occurring "only where stated 'by the most express language or by such overwhelming implication from the text [of a state statute or constitution] as [will] leave no room for any other reasonable construction.'" Jicarilla Apache Tribe v. Kelly, 129 F.3d 535, 538

(10th Cir. 1997) (citations and internal quotations omitted).

Plaintiffs contend that New Mexico has explicitly waived its Eleventh Amendment immunity for the contract law claims given N.M. Stat. Ann. § 37-1-23(A) (Michie 1990 Repl. Pamp.), which states that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." Defendants contend that the statute only allows the state to be sued on written contracts in state court. Cf. Bishop v. Doe 1, 902 F.2d 809, 810 (10th Cir. 1990) (noting State's consent to suit under Tort Claims Act exclusively in its own courts under N.M. Stat. Ann. § 41-4-18(A)). Plainly, the statute does not constitute "an unequivocal waiver specifically applicable to federal-court jurisdiction." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985). Consent to suit in state court does not constitute consent to suit in federal court. See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 119 S. Ct. 2219, 2226 (1999). Therefore, all claims against Defendants NMDOH and NMHSD must be dismissed on the grounds of Eleventh Amendment immunity.

Plaintiffs seek compensatory damages against the Defendants and punitive damages against various individual Defendants. See Pre-Trial Order filed February 1, 1999 (doc. 46). This case deals with liability for past conduct; prospective injunctive relief is not sought. See, e.g., Branson School Dist. RE-82 v. Romer, 161 F.3d 619, 632 (10th Cir. 1998), cert. denied, 119 S. Ct. 1401 (1999) (stating that Eleventh Amendment immunity may not apply where

(10th Cir. 1997) (citations and internal quotations omitted).

Plaintiffs contend that New Mexico has explicitly waived its Eleventh Amendment immunity for the contract law claims given N.M. Stat. Ann. § 37-1-23(A) (Michie 1990 Repl. Pamp.), which states that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." Defendants contend that the statute only allows the state to be sued on written contracts in state court. Cf. Bishop v. Doe 1, 902 F.2d 809, 810 (10th Cir. 1990) (noting State's consent to suit under Tort Claims Act exclusively in its own courts under N.M. Stat. Ann. § 41-4-18(A)). Plainly, the statute does not constitute "an unequivocal waiver specifically applicable to federal-court jurisdiction." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985). Consent to suit in state court does not constitute consent to suit in federal court. See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 119 S. Ct. 2219, 2226 (1999). Therefore, all claims against Defendants NMDOH and NMHSD must be dismissed on the grounds of Eleventh Amendment immunity.

Plaintiffs seek compensatory damages against the Defendants and punitive damages against various individual Defendants. See Pre-Trial Order filed February 1, 1999 (doc. 46). This case deals with liability for past conduct; prospective injunctive relief is not sought. See, e.g., Branson School Dist. RE-82 v. Romer, 161 F.3d 619, 632 (10th Cir. 1998), cert. denied, 119 S. Ct. 1401 (1999) (stating that Eleventh Amendment immunity may not apply where

plaintiffs only request prospective injunctive relief). The Eleventh Amendment bars federal jurisdiction over a state official acting in his or her official capacity in a suit for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Ellis v. University of Kansas Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998). Accordingly, Plaintiffs may not seek money damages for alleged harms against them by Defendants Buckhardt, Weydemeyer, Dossey, Rangel, and Romero, in their official capacities.

II. Qualified Immunity

The remaining individual Defendants, in their individual capacities, assert that they are entitled to qualified immunity on Plaintiffs' First Amendment retaliation claims because the right in dispute was not clearly established at the time of the violation. Plaintiffs contend that they have two First Amendment retaliation claims–as citizens qua citizens (count one) and as independent contractors (count two). The alleged violation in this case took place in February 1994, but the law concerning independent contractors did not become clearly established until January 1995 when the Tenth Circuit held that independent contractors have a First Amendment right to engage in protected speech without fear of retaliation. See Umbehr v. McClure, 44 F.3d 876, 883 (10th Cir. 1995), aff'd, Board of County Comm'rs v. Umbehr, 518 U.S. 668 (1996).

Qualified immunity generally shields public officials performing

discretionary functions from suit if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant's actions violated a clearly established constitutional right. See Guffey v. Wyatt, 18 F.3d 869, 871 (10th Cir.1994). If the plaintiff has sufficiently alleged that the defendant violated a constitutional or statutory right, we must inquire "whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998). In order to show that the law is clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id (internal quotations omitted).

Plaintiffs contend that qualified immunity is not warranted because the law concerning First Amendment protection for independent contractors was clearly established before the Umbehr decision. Specifically, Plaintiffs argue that the First Amendment protections afforded to private citizens and employees were clearly established by the Supreme Court in Perry v. Sinderman, 408 U.S. 593, 597 (1972), and Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). Therefore, the Tenth Circuit and Supreme Court in Umbehr "merely gave specific

recognition to what had been logically deduced from the rights of private citizens on the one hand, and public employees on the other. That is, that an independent contractor is protected from having its contract terminated in retaliation for exercise of First Amendment rights, and that the familiar and clearly established Pickering balancing test, adjusted to weigh the government's interest as a contractor rather than employer, determines the extent of the protection." Plaintiffs' Resp. to Defendants' Motion for Partial Summary Judgment filed Jan. 21, 1999 at 9 (doc. 44). In addition, Plaintiffs claim that the Tenth Circuit's recognition of the First Amendment rights of independent contractors in Abercrombie v. City of Catoosa, Okla., 896 F.2d 1228, 1233 (10th Cir. 1990), clearly established the right.

Plaintiffs' argument, however, does not demonstrate that the law was clearly established. As the Tenth Circuit recognized in Umbehr, "there is conflicting case law on whether those who independently contract with the government share the same degree of First Amendment protection for their speech as government employees." Umbehr, 44 F.3d at 879; see also Board of County Comm'rs v. Umbehr, 518 U.S. at 673-74 ("This Court has not previously considered whether and to what extent the First Amendment restricts the freedom of federal, state, or local governments to terminate their relationships with independent contractors because of the contractors' speech."). Given the Tenth Circuit's and the Supreme Court's statements, the court cannot say that the right

was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Just because Plaintiffs have logically deduced the same result as the Tenth Circuit and Supreme Court does not mean that the weight of authority was as Plaintiffs maintain when Defendants acted. See Tonkovich, 159 F.3d at 516. Insofar as Plaintiffs argue that the Abercrombie holding clearly established the law in 1990, that holding merely "suggested, without analysis, that independent contractors do enjoy protection against retaliation for the exercise of First Amendment rights." Umbehr, 44 F.3d at 880 (citing Abercrombie, 896 F.2d at 1233). This does not meet the standard and, therefore, Plaintiffs have not proven that in 1994 Defendants' conduct violated a clearly established constitutional right.

For similar reasons, the court rejects the notion that it was clearly established that Plaintiff WSAS as a corporate citizen had First Amendment rights apart from its independent contractor status. Though the attempt to claim that Plaintiff WSAS acted in two capacities is ingenious, particularly in light of the qualified immunity problem, no reasonable public official would make such a technical distinction. Moreover, as the law has ultimately developed, such a distinction would constitute a wholesale expansion of the qualified First Amendment rights of independent contractors after Umbehr. See Umbehr, 518 U.S. at 677-78 (adopting standards from government employment cases).

Plaintiff Knight, as executive director of WSAS, claims First Amendment injury and damages based upon "lost compensation, loss of career opportunities, and mental and emotional distress." Complaint filed January 7, 1997 at 15 (doc. 1). In ruling on a motion to dismiss the state law claims, Judge Vazquez held that Plaintiff Knight lacked standing, but opined that she could allege a First Amendment claim:

> Nowhere have Plaintiffs alleged that Ms. Knight had a contractual relationship with NMHSD or acted in any capacity other than as an employee. Ms. Knight, therefore, can not bring claims for breach of contract and breach of an implied covenant of good faith and fair dealing or derivative claims, including those for lost compensation or career opportunities. Ms. Knight may, of course, claim injuries that flow from alleged violations of her First Amendment rights, including related mental and emotional distress. Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1318-19 (9th Cir. 1989).

Doc. 22 at 12. Plaintiff Knight does claim mental and emotional distress damages. See Pretrial Order at 5 (doc. 46). Judge Vazquez suggested these claims could go forward. However, at that time, the Defendants had not yet raised their qualified immunity argument.

Plaintiff Knight's First Amendment claim now must be evaluated in the context of the Defendants' qualified immunity motion. Even in the light most favorable to her, the evidence suggests that the retaliatory action, i.e. contract termination, was directed solely at the employing corporation in its capacity as an independent contractor. Indeed, Plaintiff Knight's affidavit indicates that she understood certain alleged retaliatory conduct to be directed at WSAS. See, e.g.,

Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment filed September 25, 1998, Pl. Ex. 1 at 5 ¶ 11 (Knight aff.) (doc. 33).

As a general rule, injury must be to one's own constitutional rights to confer standing. See Trujillo v. Board of County Comm'rs, 768 F.2d 1186, 1187 (10th Cir. 1985). While a court might extend the logic of Sorrano's Gasco to this case, it simply was not clearly established law that an employee acting solely in her capacity as an employee of an independent contractor would have a First Amendment claim for emotional distress damages based upon termination of a contract. Surely not every employee of a corporate independent contractor has a civil rights claim when the government, rightly or wrongly, severs its ties with that corporate independent contractor. Because the boundaries of such a claim are hardly well-defined, Defendants are entitled to qualified immunity.

Regardless, Plaintiff Knight has not directed the court to any summary judgment evidence on the mental and emotional distress component of her First Amendment claim, let alone evidence of lost compensation and lost career opportunities. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986) (requiring some evidentiary basis other than the pleadings). On this basis alone, summary judgment would be warranted.

III. Collateral Estoppel

In the alternative, the court is persuaded that Plaintiffs should be

collaterally estopped from proving that the Defendants retaliated against them by terminating the WSAS agreement. Based upon the NMDOH decision, Judge Vazquez ruled that Defendants were collaterally estopped from asserting rightful contract termination, just as the Plaintiffs were collaterally estopped from asserting bad faith or retaliation, at least upon the state-law contract claims. See Memorandum Opinion and Order at 16 (doc. 22); Padilla v. Intel Corp., 964 P.2d 862, 865 (N.M. Ct. App. 1998) (discussing claim preclusion mechanics). Recognizing that intentional conduct is the standard for § 1983 liability, Judge Vazquez held that collateral estoppel on the issue of contract termination did not resolve the § 1983 claim. Judge Vazquez also invited further briefing upon whether collateral estoppel on the lack of retaliation and bad faith would foreclose § 1983 liability. See id. at 17 n.2. That further briefing has been accomplished under Defendants' motion for partial summary judgment on the First Amendment claims (doc. 31).

Plaintiffs have suggested no persuasive reason why the collateral estoppel ruling should not apply to the factual issues inherent in their First Amendment claims. Just as Defendants would not be allowed to assert rightful termination of the contract, Plaintiffs ought not to be able assert that the termination was a product of bad faith and retaliation. Plaintiffs contend that whether protected speech is a substantial or motivating factor in terminating the contract is a factual issue, not a legal one, and they ought to be able to prove it. They further contend

that the hearing officer's findings are insufficient to preclude consideration of this issue.  In the context of these arguments, Plaintiffs raise several points already rejected by Judge Vazquez.

The contract termination facts are totally intertwined with the First Amendment retaliation claims.  Plainly, the hearing officer was urged to consider these facts and determined that the termination was not in retaliation for the actions of WSAS or Plaintiff Knight.  See Plaintiff's Memorandum of Fact & Law in Support of Plaintiffs' Motion in Limine to Give Preclusive Effect to State Agencies' Administrative Decisions filed September 12, 1997, Ex. D at 32–33 (doc. 18). The hearing officer rejected the inference that Plaintiffs' whistle-blowing activity was a motivating factor in the contract termination.  See, e.g., id. at 33 ("[T]here is no credible evidence in the record to support the assertions in ¶22 of WSAS's proposed findings regarding alleged attempts to intimidate Western States because representatives of DOH (or HSD) feared investigation by the federal Health Care Financing Administration.").  Though the hearing officer's subsidiary factual findings did not address a First Amendment claim in so many words, the hearing officer clearly rejected WSAS's retaliation claim for lack of evidence; WSAS failed to convince her that the government's actions were based upon illegitimate motives (lack of causation), as opposed to faulty consideration of the facts before it.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that

Defendants' Motion for Summary Judgment on Qualified Immunity and Eleventh Amendment Immunity filed January 21, 1999 (doc. 42), is granted as follows:

(1) all claims against Defendants NMDOH and NMHSD, and Defendants Buckhardt, Weydemeyer, Dossey, Rangel and Romero, in their official capacities, are dismissed based upon Eleventh Amendment immunity;

(2) Defendants Buckhardt, Weydemeyer, Dossey, Rangel, and Romero are entitled to qualified immunity on Plaintiffs' First and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983 (contained in counts one and two of the complaint).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, IN THE ALTERNATIVE, that Defendants' Motion for Partial Summary Judgment on Plaintiffs' First Amendment Claims filed September 25, 1998 (doc. 31) is granted.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Partial Summary Judgment on HSD's Liability for First Amendment Retaliation and WSAS' Damages filed January 21, 1999 (doc. 38), is denied as moot.

DATED this <u>16th</u> day of August 1999 at Santa Fe, New Mexico.

_____
Paul Kelly Jr.
United States Circuit Judge
Sitting by Designation

Counsel:

Ray Twohig, Ray Twohig, P.C., and Charles Fisher, Albuquerque, New Mexico, for Plaintiffs.

Carol Ritchie, Felker, Ish, Richie & Geer, P.A. Santa Fe, New Mexico, for Defendants.